IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RBS CITIZENS NA, a national banking association,

        Plaintiff,

-vs-

M-59 TELEGRAPH PETROLEUM, LLC, a Michigan limited liability company; SE CORPORATION OF MICHIGAN, a Michigan corporation; and FAWZI SIMON, an individual,

        Defendants.

Case No.

Hon.

/

CLARK HILL PLC
William G. Asimakis, Jr. (P46155)
wasimakis@clarkhill.com
Jennifer K. Green (P69019)
jgreen@clarkhill.com
500 Woodward Avenue, Suite 3500
Detroit, MI  48226
(313) 965-8300
Attorneys for Plaintiff

**COMPLAINT**

Plaintiff RBS Citizens NA ("RBS"), a national banking association, through its attorneys Clark Hill PLC, states for its complaint against M-59 Telegraph Petroleum, LLC ("M-59 Telegraph"), SE Corporation of Michigan ("SE Corporation"), and Fawzi Simon ("Simon") as follows:

**Parties and Jurisdiction**

1.    RBS is a national banking institution with its main office located in Providence, Rhode Island.  See Wachovia Bank, N.A. v. Schmidt, 546 U.S. 303, 307 (2006) (holding that a

national bank is a citizen of the state where its main office, as designated in its articles of association, is located); see also 28 U.S.C. § 1348.

2. M-59 Telegraph is a Michigan limited liability company with its registered office address located at 141 N. Telegraph Rd., Waterford, MI 48328 and its registered mailing address at 4921 Leafdale Avenue, Royal Oak, MI 48073.

3. SE Corporation of Michigan is a Michigan corporation with its registered office address located at 141 N. Telegraph Rd., Waterford, MI 48328 and its registered mailing address at 4921 Leafdale Avenue, Royal Oak, MI 48073.

4. Simon is an individual residing in Oakland County, Michigan.

5. Upon information and belief, Simon is the sole member of M-59 Telegraph and the sole shareholder of SE Corporation.

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

7. This Court has personal jurisdiction, because Simon resides in this District, M-59 Telegraph and SE Corporation do business in in this District and their principal offices are located here, and the acts complained of herein occurred in this District.

**The Bank Account & Account Agreement**

8. M-59 Telegraph is a customer of RBS, as it maintained two deposit accounts at RBS (the "Accounts").

9. Simon conducted banking activities on behalf of M-59 Telegraph in connection with the Accounts and was an authorized signer on the Accounts.

10. The Accounts are governed by a Business Deposit Account Agreement (the "Account Agreement"). (Exhibit A).

11. M-59 Telegraph and Simon agreed in writing that the terms and conditions contained in the Account Agreement governed the Accounts. (Exhibit B, General Deposit Resolution for Single Member or Manager Managed LLC's).

12. The Account Agreement provides that the customer must "reimburse [RBS] for [its] Losses resulting from. . . the return of any deposited check for any reason." (Exhibit A, ¶ 4).

13. The Account Agreement also provides that when an account is overdrawn, the customer is "responsible for the full amount of any overdraft," and the customer agrees to "deposit sufficient funds to cover the overdraft and the related overdraft/insufficient available funds fee," and to "reimburse [RBS] for any Losses [it] incur[s] in collecting the overdraft from you." (Exhibit A, ¶ 14).

14. In addition, the Account Agreement provides that if RBS "take[s] any action to collect your debt or other amounts you owe us under this Agreement. . . you agree to reimburse [RBS] for [its] Losses," and if a legal dispute arises over the Account, RBS may recover "attorneys' fees and litigation costs" from the customer. (Exhibit A, ¶¶ 17, 34)

**The Fraudulent Check-Kiting Scheme & Resulting Overdrafts to the Accounts**

15. From December 19, 2011 through December 22, 2011, sixty-four checks totaling $2,784,766.63 were deposited into the Accounts (the "Deposited Checks").

16. The Deposited Checks were all drawn on the bank account held by Simon's other business, SE Corporation, at Main Street Bank in Bingham Farms, Michigan.

17. After the Deposited Checks were deposited at RBS, funds were withdrawn and official bank checks payable to Simon were purchased.

18. The bank checks payable to Simon were then deposited into SE Corporation's bank account at Main Street Bank.

3

19. On December 27, 2011 and December 28, 2011, thirty-three checks totaling $1,426,529.20 were returned to RBS by Main Street Bank for non-sufficient funds in SE Corporation's account (the "Dishonored Checks").

20. Because the Dishonored Checks were returned unpaid, the Accounts are now substantially overdrawn.

21. M-59 Telegraph has not deposited sufficient funds to cover the losses incurred in the Accounts as a result of the Dishonored Checks.

22. As of February 2, 2010, the Accounts were overdrawn in the amount of $573,254.41.

23. The above-described facts demonstrate a fraudulent check-kiting scheme, which is where the wrongdoer uses at least two accounts at separate banks to cover overdrafts at one bank by writing checks on the account at the other bank, thereby creating fictional positive balances in the accounts until the checks eventually get returned unpaid.

## COUNT I – BREACH OF CONTRACT

24. The Account Agreement, which governs the parties' banking relationship, provides that any losses incurred in an account due to unpaid, dishonored, and/or returned checks are the responsibility of the customer. (See Exhibit A).

25. The Account Agreement also requires the customer to deposit sufficient funds in its account in the event of a negative balance or overdraft. (See Exhibit A).

26. M-59 Telegraph has a negative balance in the Accounts totaling $573,254.41 as of February 2, 1010, due to a series of dishonored checks that were returned to RBS unpaid.

27. M-59 Telegraph has failed to reimburse RBS for the losses associated with the Accounts.

28. RBS has been damaged due to the overdrafts in the Accounts.

29. In addition to the recovering the amount of the losses incurred in the Accounts, RBS is also entitled to recover its attorney fees and expenses pursuant to the Account Agreement.

### COUNT II – VIOLATION OF MICH. COMP. LAWS 600.2952

30. Mich. Comp. Laws 600.2952(1) provides that "a person who makes, draws, utters, or delivers a check, draft, or order for payment of money upon a bank or other depository, person, firm, or corporation that refuses to honor the check, draft, or order for lack of funds or credit to pay. . . is liable for the amount of the dishonored check, draft, or order, plus a processing fee, civil damages, and costs. . . ."

31. SE Corporation was the maker of certain checks that were dishonored for lack of available funds.

32. M-59 Telegraph and Simon, along with their other agents, delivered the checks to RBS that were dishonored for lack of available funds.

33. SE Corporation, M-59 Telegraph, and Simon have failed to repay the funds at issue to RBS.

34. SE Corporation, M-59 Telegraph, and Simon are therefore liable for two times the amount of the dishonored checks and costs pursuant to Mich. Comp. Laws 600.2952.

### COUNT III – FRAUD

35. M-59 Telegraph, SE Corporation, and Simon knowingly made certain material misrepresentations regarding the sufficiency of funds available to pay the checks deposited between December 19, 2011 and December 22, 2011, failed to disclose and/or otherwise concealed that there was a lack of sufficient funds available to pay the checks deposited between December 19, 2011 and December 22, 2011.

36. M-59 Telegraph, SE Corporation, and Simon knowingly engaged in a check-kiting scheme and knowingly deposited fraudulent checks with the knowledge that there were insufficient funds to pay the checks.

37. M-59 Telegraph, SE Corporation, and Simon made these material misrepresentations with the knowledge they were false, and/or they made these misrepresentations with reckless disregard as to their accuracy.

38. M-59 Telegraph, SE Corporation, and Simon made these misrepresentation with the intent to induce reliance by RBS.

39. RBS relied on these misrepresentations to its detriment.

40. RBS was damaged as a result of these misrepresentations.

## COUNT IV – NEGLIGENCE

41. M-59 Telegraph, SE Corporation, and Simon owed a duty to maintain funds sufficient to pay the checks.

42. M-59 Telegraph, SE Corporation, and Simon, individually or through their negligent supervision of their employees or other agents breached that duty by failing to maintain sufficient funds to the checks deposited between December 19, 2011 and December 22.

43. As a direct and proximate cause of these breaches, RBS was damaged.

## COUNT V – CIVIL CONSPIRACY

44. Through an express or implied agreement among them, M-59 Telegraph, Simon, and SE Corporation, as well as other unnamed individuals, were involved in a concerted action to commit fraud, to commit negligence, to perpetrate a fraudulent check-kiting scheme against RBS, and to cause a breach of the Account Agreement.

45. The purpose of the conspiracy was to accomplish a criminal or unlawful goal and/or to accomplish a lawful purpose by the use of criminal or unlawful means.

46. In addition to common law civil claims, the act of check-kiting and/or check fraud is also criminal pursuant to both state and federal law under Mich. Comp Laws. 750.248 and 18 U.S.C. 1344, and the making, drawing, and/or delivering a check to a bank for deposit that lacks sufficient funds to pay is unlawful pursuant to Mich. Comp. Laws. 600.2952.

47. Each entity and individual defendant knew of, agreed to, and/or acquiesced in this wrongful, fraudulent, criminal, and/or unlawful conduct.

48. RBS was damaged as a result of this conspiracy.

49. Each defendant benefited by this wrongful, fraudulent, criminal, and/or unlawful conduct.

50. Even if each defendant did not benefit by this wrongful, fraudulent, criminal, and/or unlawful conduct, each is still liable to RBS.

**COUNT VI – EQUITABLE RELIEF/PIERCING THE CORPORATE VEIL**

51. M-59 Telegraph and/or SE Corporation were used as an instrumentality of Simon for his own profit.

52. M-59 Telegraph and/or SE Corporation were used as an instrumentality to disburse corporate funds to Simon personally.

53. M-59 Telegraph and/or SE Corporation are mere agents or instrumentalities of its sole member, Simon, and is used as a device to avoid legal obligations.

54. Simon has used M-59 Telegraph and/or SE Corporation to commit a fraud or other wrong.

55. RBS was injured by Simon's use of M-59 Telegraph and SE Corporation as a mere agent or instrumentality.

7729821.1 27431/150984

## COUNT VII – EXEMPLARY DAMAGES

56. The conduct describe above of M-59 Telegraph, SE Corporation, and Simon was so malicious, extreme, and outrageous so as to justify exemplary damages.

WHEREFORE, RBS is entitled to a judgment against M-59 Telegraph, SE Corporation, and Simon, jointly and severally, in an amount of at least $573,254.41, plus double damages pursuant to Mich. Comp. Laws 600.2952, exemplary damages, as well as costs, expenses, and all applicable attorney fees and interest.

                              Respectfully submitted,

                              CLARK HILL PLC

                              By: s/William G. Asimakis, Jr.
                                      William G. Asimakis, Jr. (P46155)
                                      wasimakis@clarkhill.com
                                      Jennifer K. Green (P69019)
                                      jgreen@clarkhill.com
                                      500 Woodward Avenue, Suite 3500
                                      Detroit, MI 48226
                                      (313) 965-8300

Date: March 16, 2012                    Attorneys for RBS

7729821.1 27431/150984