UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**RBS CITIZENS, NA,**

              Plaintiff,

                                             No. 2:12-cv-11193
vs.                                          Hon. Gerald E. Rosen

**M-59 TELEGRAPH PETROLEUM
LLC, et al.,**

              Defendants.

_____/

**OPINION AND ORDER DENYING PLAINTIFF'S
REQUEST FOR TEMPORARY RESTRAINING ORDER**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on February 12, 2013 at 10:00 a.m.

PRESENT:       Hon. Gerald E. Rosen
                          Chief Judge, United States District Court

### I. INTRODUCTION

By *ex parte* motion filed on January 14, 2013, Plaintiff RBS Citizens NA requests a Temporary Restraining Order against Defendants M-59 Petroleum, LLC, SE Corporation of Michigan, and their owner, Fawzi Simon, to require them to preserve funds being maintained in their attorney's client trust account. The Court denied *ex parte* relief, but scheduled a hearing on the motion, at which both parties appeared. Defendants oppose this motion

1

because "[t]he law does not allow for a prejudgment asset freeze in an action for money damages such as this one."

## II. FACTUAL BACKGROUND

On March 16, 2012, Plaintiff brought an action against Defendants, alleging Breach of Contract, Violation of MCL § 600.2952, Fraud, Negligence, and Civil Conspiracy. Plaintiff seeks to pierce the corporate veil and receive exemplary damages in the amount of $1,146,508.82, double the amount of RBS's loss as provided by MCL § 600.2952. After several failed attempts to obtain Defendant Simon's deposition, Plaintiff filed a Motion for Default Judgment. Defendant was eventually deposed, but invoked the Fifth Amendment, which carries a negative inference in civil proceedings. Plaintiff filed a Motion for Summary Judgment on November 29, 2012, to which Defendants failed to respond in a timely manner. A Show Cause hearing was held on December 10, 2012, at which the Court informed the parties that (i) because of Defendants' consistent failure to adhere to litigation deadlines, the Court would not allow Defendants to file a tardy response to Plaintiff's Motion for Summary Judgment and (ii) that it would resolve the case on that motion. Following that hearing, Plaintiff filed the instant request for a TRO on January 14, 2013, asking this Court to prevent Defendants from removing

2

the funds in their attorney's client trust account prior to adjudication of this claim on the merits.

Defendants' attorney's client trust account contains $375,000 in relation to this dispute. Plaintiff claims that these funds have been "earmarked for a down-payment towards a settlement with RBS, if one should be reached," and seeks a TRO to prevent Plaintiff from removing these funds prior to judgment. Defendant Simon claims that the funds were a conditional loan from his brother, placed in the attorney's possession on the condition that they "could only be used for the purpose of a possible settlement of this case, [and] the money could not come into the possession or control" of Defendants. The reason for this is that Defendants have multiple judgments pending against them from other creditors, and that granting possession of the money to Defendants would allow the other creditors to attach or otherwise obtain it.

Plaintiff argues that a TRO is required because (i) Defendants' assets are all mortgaged or otherwise encumbered; (ii) Defendants have no equity; (iii) Defendants may be on the verge of declaring bankruptcy; (iv) Defendant Simon's personal income is already under garnishment; and (v) Defendants already have multiple other judgments pending against them. Absent a TRO, Plaintiff believes that Defendants will transfer these funds, decreasing the likelihood of collection if a judgment is attained in its favor.

## III. DISCUSSION

Plaintiff's request for a TRO must be denied because Plaintiff has no property interest in these funds. As the Supreme Court stated in *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999), "the District Court ha[s] no authority to issue a preliminary injunction preventing [defendants] from disposing of their assets pending adjudication" of a contract claim for money damages. The plaintiff in *Grupo Mexicano* -- like the Plaintiff here -- sought a preliminary injunction to prevent defendant from transferring its rights in certain bonds to other parties on the grounds that defendant was (i) at a high risk of insolvency; (ii) in the process of dissipating its assets to other creditors; and (iii) taking actions with its assets that would "frustrate any judgment" plaintiff could obtain.

Despite these risks and the district court's determination that plaintiff was "almost certain" to succeed on the merits of its claim, the Supreme Court reversed the preliminary injunction, holding that "a general creditor (one without a judgment) had no cognizable interest, either at law or in equity, in the property of his debtor, and therefore could not interfere with the debtor's use of that property." *Grupo Mexicano*, 527 U.S. at 319-20. Citing Blackstone, the Court noted that "a debtor may prefer one creditor to

4

another, in discharging his debts, whose assets are wholly insufficient to pay all the debts." *Grupo Mexicano*, 527 U.S. at 321-22. As the funds in this case are similarly funds in which Plaintiff has no property interest, this Court lacks the power to issue a TRO restraining Defendants use of those funds.

Plaintiff's argument attempts to avoid this conclusion in several ways. First, its claim that the funds were "earmarked" for settlement of this claim seems to be an attempt to imply a property interest when, in fact, none exists. Plaintiff also seems to argue that its claim sounds in Equity because Count VI of its Complaint is for "Equitable Relief/Piercing the Corporate Veil." However, piercing the corporate veil "is not itself an action but is merely a procedural means of allowing liability on a substantive claim." 18 Am. Jur. 2d Corporations § 47 (citing *International Financial Services Corp. v. Chromas Technologies Canada, Inc.*, 356 F.3d 731 (7th Cir. 2004); *In re Transcolor Corp.*, 296 B.R. 343 (Bankr. D. Md. 2003)). The underlying substantive claim in this case is monetary damages in an amount exceeding $1,146,508.82, which is clearly not an equitable remedy. Plaintiff also surmises that these funds "are potentially the same funds that were wrongfully taken from RBS through Defendants' [alleged] check-kiting scheme." However, the only evidence addressing the source of these funds is Defendants' affidavit, which asserts that the funds are on loan from

5

Defendant Simon's brother, and consequently cannot be the same funds "wrongfully taken from RBS."

Analyzing this claim through the familiar TRO framework demands the same result. While Plaintiff has certainly demonstrated a likelihood of success on the merits -- indeed, as in *Grupo Mexicano*, its unopposed motion for summary judgment practically guarantees success -- Plaintiff cannot demonstrate the type of irreparable harm required for injunctive relief, as "monetary damages do not generally constitute irreparable harm." *Manakee Professional Medical Transfer Serv. v. Shalala*, 71 F.3d 574, 581 (6th Cir. 1995). Indeed, granting Plaintiff's request for a TRO would both harm the Defendants' in particular and act against good public policy, as the requirement that a creditor receive a judgment before being allowed to act upon a debtor's property "goes to the substantive rights of all property owners." *Grupo Mexicano*, 527 U.S. at 323. Further, rather than "preserve the status quo" pending resolution on the merits, issuing a TRO in this matter would upset the status quo by vesting Plaintiff with an interest in Defendants' property which it currently does not possess.

Plaintiff contests these conclusions by citing *De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212 (1945), for the general proposition that "[a] preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally." However, the

6

*Grupo Mexicano* Court also quoted *De Beers* in reference to the specific type of injunctive relief requested here:

> To sustain the challenged order [granting a preliminary injunction restraining defendants from removing their assets from the country pending adjudication on the merits] would create a precedent of sweeping effect. This suit, as we have said, is not to be distinguished from any other suit in equity. What applies to it applies to all such. Every suitor who resorts to chancery for any sort of relief by injunction may, on a mere statement of belief that the defendant can easily make away with or transport his money or goods, impose an injunction on him, indefinite in duration, disabling him to use so much of his funds or property as the court deems necessary for security or compliance with its possible decree. And, if so, it is difficult to see why a plaintiff in any action for a personal judgment in tort or contract may not, also, apply to the chancellor for a so-called injunction sequestrating his opponent's assets pending recovery and satisfaction of a judgment in such a law action. No relief of this character has been thought justified in the long history of equity jurisprudence.

*Grupo Mexicano*, 527 U.S. at 327 (quoting *De Beers*, 325 U.S. at 222-23).

Put more simply, Plaintiff's concern is no different than that of every other Plaintiff in a claim for money damages. Consequently, this case does not warrant the extraordinary relief of "interfer[ing] with the debtor's disposition of his property at the instance of a nonjudgment creditor." *Grupo Mexicano*, 527 U.S. at 329.

7

## IV. CONCLUSION

For all of the foregoing reasons, as well as those reasons stated on the record,

IT IS HEREBY ORDERED that Plaintiff's Request for a Temporary Restraining Order is DENIED.

IT IS SO ORDERED.

Dated: February 12, 2013

> s/Gerald E. Rosen
> GERALD E. ROSEN
> CHIEF JUDGE, U.S DISTRICT COURT

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, Tuesday, February 12, 2013, by electronic and/or ordinary mail.

> s/Julie Owens
> Case Manager, (313) 234-5160