**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**


RBS CITIZENS, NA,

               Plaintiff,

                              No. 2:12-cv-11193
vs.                        Hon. Gerald E. Rosen

M-59 TELEGRAPH PETROLEUM
LLC, a Michigan limited liability company;
SE CORPORATION OF MICHIGAN, a
Michigan corporation; and FAWZI SIMON,
an individual;

               Defendants.

_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

On March 16, 2012, Plaintiff RBS Citizens, NA, filed a complaint against

Defendants M-59 Petroleum, LLC, SE Corporation of Michigan, and their owner,

Fawzi Simon, alleging Breach of Contract, Violation of MCL § 600.2952, Fraud,

Negligence, and Civil Conspiracy related to a purported check-kiting scheme.

Following Defendants consistent failure to comply with discovery requests and the

deadlines set for this litigation, Plaintiff filed a Motion for Default Judgment and a

Motion to Compel Discovery.   Plaintiff eventually deposed Defendant Simon,

during which Simon asserted his Fifth Amendment privilege against self-incrimination.   Plaintiff filed the instant Motion for Summary Judgment on November 29, 2012, to which Defendants failed to respond in a timely manner. Following a hearing on January 3, 2013, the Court -- having still not received Defendants' response to Plaintiff's Motion for Summary Judgment -- ruled that Defendants would not be allowed to file a response and determined that it would decide the case on the merits of Plaintiff's motion.

## II. FACTUAL BACKGROUND

Plaintiff RBS Citizens, N.A., d/b/a Charter One, is a banking institution holding three accounts for Defendant M-59 Telegraph Petroleum, L.L.C. (hereinafter "M-59"), a Michigan limited liability company whose sole member is Defendant Fawzi Simon (hereinafter "Simon").   Simon is also the sole owner of Defendant SE Corporation (hereinafter "SE Corp.").

In January 2011, Simon opened three checking accounts with Plaintiff's bank on behalf of his LLC, M-59.   In doing so, he signed Business Signature Cards and a General Deposit Resolution, acknowledging that he agreed to Plaintiff's Business Deposit Account Agreement (hereinafter "Account Agreement").   As part of the Account Agreement, M-59 agreed to "reimburse [Plaintiff] for [its] Losses resulting from . . . the return of any deposited check for any reason."   M-59 also agreed "to deposit sufficient funds to cover the overdraft" and to "reimburse

2

[Plaintiff] for any Losses we incur in collecting the overdraft from you." Pl.'s Mot. Summ. J., Ex. F. Simon also controlled SE Corp.'s two checking accounts - one at Talmer Bank and Trust, the other at Main Street Bank.

From August through December of 2011, Defendants began to engage in an alleged check-kiting scheme. From August through November, Simon drew checks from SE Corp.'s Talmer Account and deposited them into SE Corp.'s Main Street Account. Simon then issued a check from Main Street to M-59, which he deposited in two of his three accounts with Plaintiff. He then consolidated the funds in the second account, and transferred them to his third account with Plaintiff. Next, Simon would transfer the funds to an unknown account with an unknown entity, before being electronically transferred to the SE Talmer account. The result of this activity is to falsely inflate the balance of each bank account by taking advantage of the time lag between when the money is transferred and when it actually arrives in the account, during which period the bank lists the account as having received the transferred funds. Plaintiff suffered no harm as a result of this kite.

Defendants began another alleged check-kiting scheme in December 2011. The record shows that, on an almost daily basis, Simon withdrew funds from two of his three accounts with Plaintiff and purchased two cashier's checks -- in identical amounts -- from Plaintiff, made payable to himself. Simon endorsed

these checks to SE Corp. and deposited them into the Main Street account.  Finally, he issued checks from the Main Street account to M-59, and deposited the checks into the original two accounts with Plaintiff.

On December 27, 2011, Main Street Bank returned fifteen of SE Corp.'s checks (Nos. 10827-10842) -- totaling $697,412.00 -- to Plaintiff for insufficient funds.  On December 28, Main Street returned sixteen more checks -- totaling $729,117.00 -- to Plaintiff for insufficient funds.  These two returns resulted in overdrafts on M-59's accounts -- after some additional funds were deposited -- of $573,254.41.

On January 20, 2012, Plaintiff sent Simon, M-59, and SE Corp. a letter demanding reimbursement for the full amount of the dishonored checks.  When Defendants failed to comply, Plaintiff filed this suit, alleging Breach of Contract, Violation of MCL § 600.2952, Fraud, Negligence, and Civil Conspiracy.  Plaintiff also seeks to pierce the corporate veil and receive exemplary damages in the amount of $1,146,508.82, double the amount of RBS's loss as provided by MCL § 600.2952.  After several failed attempts to obtain Defendant Simon's deposition, Plaintiff filed a Motion for Default Judgment on September 13, 2012.  Plaintiff eventually deposed Simon, who invoked his Fifth Amendment privilege against self-incrimination and refused to answer questions regarding: (i) whether he reimbursed Plaintiff for the losses on those accounts; (ii) whether he defrauded

RBS by operating a check-kiting scheme; and (iii) whether the account balances were fictional on the dates those checks were issued.

Plaintiff filed a Motion for Summary Judgment on November 29, 2012, to which Defendants failed to respond in a timely manner. A Show Cause hearing was held on December 10, 2012, at which the Court informed the parties that: (i) because of Defendants' consistent failure to adhere to litigation deadlines, the Court would not allow Defendants to file a tardy response to Plaintiff's Motion for Summary Judgment; and (ii) that it would resolve the case on that motion.

Following that hearing, Plaintiff filed a request for a TRO on January 14, 2013, asking this Court to prevent Defendants from removing funds in their attorney's client trust account prior to adjudication of this claim on the merits. That motion was heard and denied on February 12, 2013. Following this hearing, the parties appeared close to a settlement agreement. The Court held a settlement conference on August 5, 2013, during which the parties advised the Court that they had agreed upon the amount of the settlement, but were stuck on an issue of procedure. Although this issue appears to be resolved, the parties have now advised the Court that they are no longer in agreement on a settlement figure. As such, the Court will proceed with this case on the merits.

Having reviewed Plaintiff's brief -- which is unopposed -- and the record as a whole, the Court finds that the relevant facts, allegations, and legal arguments are

adequately presented in these written materials, and that oral argument would not aid the decisional process. Accordingly, the Court will decide Plaintiff's motion "on the briefs." See Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. The Court's Opinion and Order is set forth below.

### III. DISCUSSION

**A.    Summary Judgment Standard**

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court has explained, "the plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In addition, where a moving party -- here, Plaintiff -- seeks an award of summary judgment in its favor on a claim or issue as to which it bears the burden of proof at trial, this party's "showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir. 1986) (internal quotation marks, citation, and emphasis omitted).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.,* 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party may not rely on mere allegations or denials, but must "cit[e] to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed." Fed. R. Civ. P. 56(c)(1). But, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack,* 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted).

Although Defendants have not responded to Plaintiff's Motion for Summary Judgment, such a failure is not the end of this Court's inquiry. The Sixth Circuit has held that a party's failure to respond to an opponent's motion for summary judgment should not by itself warrant a grant of summary judgment. *Carver v. Bunch,* 946 F.2d 451 (6th Cir. 1991). The *Carver* panel stated:

> As the Supreme Court has repeatedly held, "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." Additionally, under Rule 56(c) a party moving for summary judgment always bears the burden of demonstrating the absence of a genuine issue as to a material fact . . . . Although subsequent Supreme Court cases have redefined the movant's initial burden . . . the requirement that the movant bears the initial burden has remained unaltered. More importantly for all purposes, the movant must always bear this initial burden regardless if an adverse party fails to respond. In other words, a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the

7

movant's motion for summary judgment to ensure that he has discharged that burden.

*Carver* at 454-455 (citations omitted).

In addition to their failure to respond to Plaintiff's motion, Defendant Simon -- along with the bookkeepers for M-59 and SE Corp. -- invoked their Fifth Amendment privilege during their depositions, which precludes Defendants from introducing evidence on those issues later in the litigation.  *See, e.g., Traficant v. Commissioner of I.R.S.*, 884 F.2d 258, 265 (6th Cir. 1989); *In re Edmond*, 934 F.2d 1304, 1308-09 (4th Cir. 1991); *U.S. v. Parcels of Land*, 903 F.2d 36, 43 (1st Cir. 1990); *Pedrina v. Han Kuk Chun*, 906 F. Supp. 1377, 1398 (D. Haw. 1995), *aff'd*, 97 F.3d 1296 (9th Cir. 1996), *cert. denied*, 520 U.S. 1268 (1997); *U.S. v. Island Park*, 888 F. Supp. 419, 431-32 (E.D.N.Y. 1995); *U.S. v. All Assets & Equip. of West Side Bldg. Corp.*, 843 F. Supp. 377, 382-83 (N.D. Ill.1993), *aff'd*, 58 F.3d 1181 (7th Cir. 1995).  Federal courts find such a preclusive effect grounded in the following reasoning:

> [a] defendant may not use the fifth amendment to shield herself from the opposition's inquiries during discovery only to impale her accusers with surprise testimony at trial.
>
> * * * * * *
>
> Because claimant has asserted a fifth amendment claim in discovery, this court holds that he may not now waive the privilege and testify. Neither may he submit affidavits in opposition to the government's motion for summary judgment.

8

*U.S. v. Sixty Thousand Dollars in U.S. Currency*, 763 F. Supp. 909, 914 (E.D. Mich. 1991).

Further, invocation of a Fifth Amendment privilege against self-incrimination in a civil suit entitles a trier of fact to draw an adverse inference from this assertion of privilege. *See*, *e.g.*, *Nationwide Life Insurance Co. v. Richards*, 541 F.3d 903, 911 (9th Cir. 2008); *In re High Fructose Corn Syrup Antitrust Litigation*, 295 F.3d 651, 663-64 (7th Cir. 2002). Therefore, the Court must examine the record and Plaintiff's motion to ensure (i) that Plaintiff has presented sufficient facts to meet its burden on each cause of action, and (ii) that no genuine issues of material fact exist as to the evidence offered to support Plaintiff's motion.

## B.    Breach of Contract (Count I)

Plaintiff has presented evidence sufficient to establish that M-59 is liable for breach of contract. M-59 entered into a contract when it signed the Signature Card and Dispute Resolution with RBS, which bound 5-59 to the terms of the Account Agreement. In doing so, M-59 agreed to "reimburse [Plaintiff] for [its] Losses resulting from . . . the return of any deposited check for any reason" and "to deposit sufficient funds to cover the overdraft and the related overdraft/insufficient available funds fee immediately and you agree that the overdraft and any overdraft/insufficient available funds fee ***may be repaid out of any subsequent deposit.***"    Pl.'s Mot. Summ. J., Ex. F, Account Agreement ¶¶ 4, 14, 17, 34.

Plaintiff, based on the statements for Defendants' account -- which it has submitted to this Court -- has determined that the current amount owed from Defendants' dishonored checks is $573,254.41.  M-59 has presented no evidence to counter this figure, and pled the Fifth on the issue of whether they have reimbursed Plaintiff for its losses.  Therefore, summary judgment in favor of Plaintiff in the amount of $573,254.41 is appropriate.

## C.    Violation of Mich. Comp. Laws § 600.2952 (Count II)

For the reasons discussed in § III.B, M-59 is also liable under Mich. Comp. Laws § 600.2952,[1] which provides that "a person who makes, draws, utters, or delivers a check, draft, or order for payment of money upon a bank . . . that refuses to honor the check, draft, or order for lack of funds . . . is liable for the amount of the dishonored check, draft, or order, plus a processing fee, civil damages, and costs, as provided in this section."  Plaintiff has submitted evidence -- uncontested by M-59 -- that M-59 has drafted several significant checks which they have refused to honor.

While Plaintiff is correct that § 600.2952(4) provides for "civil damages of 2 times the amount of the dishonored check, draft, or order or $100, whichever is greater," it fails to mention the limitation placed on that provision by § 600.2952(5), which states that:

---

[1] Given this, the Court declines to hold Defendants liable under Plaintiff's alternative Negligence theory (Count IV).

> Subsection (4) does not apply if, before the trial of an action brought pursuant to this section, the maker pays to the payee or a designated agent of the payee, in cash, the total of the amounts described in subsection (3)(b), plus reasonable costs, not exceeding $250.00, as agreed to by the parties.

The "total of the amounts" in subsection (3)(b), in turn, are "the full amount of the dishonored check[s] . . . plus a processing fee of $35.00." Therefore, the plain language of the statute provides that Plaintiff is not entitled to double damages if the full payment of the account is made "prior to trial." Ordering double damages at this point would be premature and deny M-59 proper notice of its potential increased liability under this section. In other words, M-59 would have until the beginning of trial to make its payment and avoid double liability; immediately ordering double damages would be fundamentally unfair to Defendants. Because granting Plaintiff's motion disposes of this case in its entirety, equity requires granting Defendants a grace period to make their payment in full. And, as referenced at the January 3, 2013 hearing, the Court would like supplemental briefing on the availability of § 600.2952(4)'s statutorily enhanced damages in this matter. Therefore, if Defendants fail to make their payment in full within the grace period or if this matter is not otherwise resolved, Plaintiff may file a motion with this Court to amend the Judgment to recover § 600.2952(4)'s statutorily enhanced damages.

**D.      Fraud (Count III)**

To establish fraud, Plaintiff must show that (i) Defendants made a material misrepresentation, (ii) which they knew to be false or made with reckless disregard for its truth, (iii) with the intention that it be relied upon by Plaintiff.  Further, Plaintiff (iv) must have relied upon that statement (v) to its detriment.  *Disner v. Westinghouse Electric Corp.*, 726 F.2d 1106, 1110 (6th Cir. 1989).  Plaintiff has established these elements.  First, Plaintiff has presented evidence of the checks signed by Defendants -- through their agent, Simon -- which constitute a "representation."  *Federman v. United States*, 36 F.2d 441, 442 (7th Cir. 1929).  Second, Simon took the Fifth on the questions of whether he (i) "intend[ed] Charter One [Bank] to believe that there were sufficient funds to cover these checks," (ii) whether it was his "intention to create a false balance at Charter One Bank against which [he] could draw the next day by making deposits on . . . the Main Street Bank account," and (iii) whether he "engaged in this pattern for purposes of defrauding . . . Charter One Bank."  Pl.'s Mot. Summ. J., Ex. A. Because Simon invoked his Fifth Amendment privilege on these issues of intent -- of which his statements are the best evidence -- the Court will apply the adverse inference and find that Plaintiff has established the "knowledge" and "intent" prongs of fraud.  Further, there is no question that Plaintiff relied upon Defendants'

checks to its detriment.  Therefore, Plaintiff is entitled to summary judgment on its claim of fraud against all Defendants.

## E.      Civil Conspiracy (Count V)

Plaintiff has presented sufficient evidence for this Court to find that all three Defendants -- M-59, Simon, and SE Corp. -- were engaged in a conspiracy. Conspiracy may be established by circumstantial evidence, *Temborius v. Slatkin*, 157 Mich. App. 587, 599 (1987), and an intra-corporate conspiracy may be found where the conspiring agents' conduct was outside the scope of their employment. *Mercure v. Van Buren Twp.*, 81 F. Supp. 2d 814, 833 (E.D. Mich. 2000).

Here, it is clear from the evidence that Simon was the conspiring agent for both M-59 and SE Corp.  Whether he made the deposits himself or the deposits were made by agents under his authority -- he employed two bookkeepers who were authorized to make deposits and sign checks for both M-59 and SE Corp. -- the coordination of the transactions between Simon, M-59, and SE Corp. in executing what this Court has already found to be fraudulent activity demonstrates the all three were "jointly engaged" in defrauding Plaintiff.  Further, Simon and both of his bookkeepers invoked their Fifth Amendment privilege regarding their role in executing the transactions relevant to Plaintiff's harm.  Consequently, Plaintiff is entitled to a negative inference that they were jointly engaged in this fraudulent activity.  Summary judgment in favor of Plaintiff is appropriate.

**F.      Piercing the Corporate Veil**

While the law generally treats a corporation as an entirely separate entity
from its stockholders -- even when it is entirely owned by a single individual --
courts will "pierce the corporate veil" and impose liability upon a shareholder in
order to prevent fraud or injustice. *Foodland Distributors v. Al-Naimi*, 220 Mich.
App. 453, 456 (1996).  In determining whether to pierce the corporate veil, the
Sixth Circuit has looked at factors such as (i) whether the corporation is the mere
instrumentality of another individual; (ii) whether the corporate entity was used to
commit fraud; and (iii) whether the plaintiff was unjustly harmed.  *Bodenhamer
Building Corp. v. Architectural Research Corp.*, 873 F.2d 109, 112 (6th Cir. 1989).
Evidence of improper separation includes commingling of funds between separate
entities, an individual treating the assets of a corporation as his own, and an
unauthorized diversion of corporate funds or assets for personal uses.  *Id.*

The documentary evidence in this case -- as well as the negative
implications from Simon's testimony -- demonstrates that the corporate veil should
be pierced in this case.  The funds of M-59 and SE Corp. were consistently
commingled and improperly diverted, as transactions between them were executed
on a daily basis -- not for goods and services rendered -- but simply to help each
retain the appearance of financial solvency.  Further, in accomplishing this end,
Simon would draw upon M-59's bank account and use the funds to endorse

cashier's checks to himself in his personal capacity, effectively treating the assets of two separate legal entities "as his own" for purposes of maintaining their joint outward appearance of solvency.  Simon has presented no evidence to contradict the facts presented by Plaintiff, and when offered a chance to explain the transaction at his deposition, Simon invoked his Fifth Amendment privilege.  From these facts, the Court will grant Plaintiff's request to pierce the corporate veil of both M-59 and SE Corp., thereby allowing Defendant Simon to be held personally liable for the actions of both corporations.

## G.    Injunctive Relief for Plaintiff

Prior to this adjudication on the merits, Plaintiff moved for injunctive relief with respect to preventing the transfer of $375,000.00 from Defendants' attorney's client trust account.  This Court denied Plaintiff's motion, finding that Plaintiff had no property interest in these funds pre-adjudication.  Having now reached the merits of the case, the Court will now revisit Plaintiff's request for injunctive relief in light of (1) the risk that Defendants will transfer, remove or otherwise dispose of the funds in Defendants' attorney's client trust account which are otherwise available to satisfy, at least in part, the Judgment entered by the Court against Defendants in this action; and (2) the likelihood that Plaintiff will not be able to collect on the Judgment against Defendants without access to the funds in Defendant's attorney's client trust account.  Accordingly, the Court permanently

enjoins Defendants, their counsel, officers, servants, employees, representatives, or agents from transferring, removing, or otherwise disposing of the $375,000.00 in Defendants' attorney's client trust account unless for the purpose of satisfying Judgment in this matter.

### IV. CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Plaintiff's Request for Summary Judgment is GRANTED.

IT IS FURTHER ORDERED that Defendants M-59 TELEGRAPH PETROLEUM LLC, SE CORPORATION OF MICHIGAN, and FAWZI SIMON, as co-conspirators, are JOINTLY AND SEVERALLY LIABLE for Plaintiff's damages;

IT IS FURTHER ORDERED that the corporate veil for M-59 TELEGRAPH PETROLEUM LLC is pierced, and that Defendant Fawzi Simon is personally liable for Plaintiff's damages.

IT IS FURTHER ORDERED that the corporate veil for SE CORPORATION OF MICHIGAN is pierced, and that Defendant Fawzi Simon is personally liable for Plaintiff's damages.

IT IS FURTHER ORDERED that, within thirty (30) days, Defendants shall compensate Plaintiff for its damages in the amount of $573,254.41, plus reasonable attorney fees.

IT IS FURTHER ORDERED that, if Defendants fail to compensate Plaintiff within thirty (30) days from the issuance of this order or if this matter is not otherwise resolved, Plaintiff may file a motion with this Court to amend the Judgment to recover MCL § 600.2952(4)'s statutorily enhanced damages.

IT IS FURTHER ORDERED that in light of (1) the risk that Defendants will transfer, remove or otherwise dispose of the funds in Defendants' attorney's client trust account which are otherwise available to satisfy, at least in part, the Judgment entered by the Court against Defendants in this action; and (2) the likelihood that Plaintiff will not be able to collect on the Judgment against Defendants without access to the funds in Defendant's attorney's client trust account, Defendants, their counsel, officers, servants, employees, representatives, or agents are permanently enjoined from transferring, removing, or otherwise disposing of the $375,000.00 in Defendants' attorney's client trust account unless for the purpose of satisfying Judgment in this matter.

IT IS FURTHER ORDERED that Plaintiff's Motion for Default Judgment [Dkt. # 14] is DISMISSED as MOOT.

17

IT IS FURTHER ORDERED that Plaintiff's Motion to Compel Discovery

[Dkt. # 19] is DISMISSED as MOOT.

**IT IS SO ORDERED.**


Dated:  August 21, 2013                    s/Gerald E. Rosen
                                           GERALD E. ROSEN
                                           CHIEF, U.S. DISTRICT COURT


I hereby certify that a copy of the foregoing document was mailed to the attorneys
of record on this date, August 21, 2013, by electronic and/or ordinary mail.

                                           s/Julie Owens
                                           Case Manager, 313-234-5135