UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**RBS CITIZENS, NA**,

      Plaintiff,

vs.

          No. 2:12-cv-11193
          Hon. Gerald E. Rosen

**M-59 TELEGRAPH PETROLEUM LLC**, a Michigan limited liability company;
**SE CORPORATION OF MICHIGAN**, a Michigan corporation; and **FAWZI SIMON**, an individual,

      Defendants.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION TO AMEND JUDGMENT**

**I. INTRODUCTION**

Defendants engaged in a complicated check-kiting scheme in 2011. By quickly drawing from and depositing checks to their various bank accounts with RBS Citizens Bank, Defendants falsely inflated their account balances such that they overdrew their accounts to the tune of over $700,000. The scheme quickly collapsed, and Plaintiff demanded that Defendants reimburse Plaintiff for its loses. Defendants failed to make Plaintiff whole, so Plaintiff commenced this action.

On August 21, 2013, this Court entered an order granting Plaintiff's Motion for Summary Judgment on Plaintiff's breach of contract, violation of M.C.L. §

1

600.2952, fraud, and civil conspiracy claims. *RBS Citizens, NA v. M-59 Telegraph Petroleum LLC*, 2013 WL 4496248 (E.D. Mich. Aug. 21, 2013) (Rosen, C.J.). This Court entered judgment in the amount of $573,254.41, plus reasonable attorney fees. Recognizing that M.C.L. § 600.2952(4) provides for treble damages, this Court provided Defendants with a 30-day grace period in which to satisfy this judgment. Defendants did not take advantage of this grace period.

Plaintiff has now moved this Court to amend the judgment to recover treble damages in the amount of $1,720,013.23, as well as to liquidate its attorney fee award in the amount of $96,104.00. Having reviewed Plaintiff's brief and Defendants' Response, Plaintiff's affidavits in support of their request for fees, and the record as a whole, the Court is now prepared to amend the judgment and enter a monetary award. This Opinion and Order sets forth the Court's decision.

## II. DISCUSSION

### A. Plaintiff is entitled to Treble Damages under M.C.L. § 600.2952(4)

M.C.L. § 600.2952 provides that "a person who makes, draws, utters, or delivers a check, draft, or order for payment of money upon a bank . . . that refuses to honor the check, draft, or order for lack of funds . . . is liable for the amount of the dishonored check, draft, or order, plus a processing fee, civil damages, and costs, as provided in this section." Pursuant to § 600.2952(3) and (4), a party who fails to reimburse the full amount of a dishonored check following a formal

2

demand and who is subsequently found responsible for payment in a civil action is liable for "*all* of the following:"

    (a)    The full amount of the check, draft, or order.
    (b)    Civil damages of 2 times the amount of the dishonored check, draft, or order or $100.00, whichever is greater.
    (c)    Costs of $250.00.

§ 600.2952(4) (emphasis added). Under § 2952(5), however, a party may escape these damages if, "before the trial . . . [it] pays to the payee or a designated agent of the payee, in cash, [the total amount of the dishonored checks plus a $35.00 processing fee], plus reasonable costs, not exceeding $250.00, as agreed to by the parties." § 2952(5).

The Court is more than satisfied that Plaintiff is entitled to § 2952(4)'s statutory enhancement. Plaintiff made a formal demand for reimbursement (Ex. A. to Plf's Mtn., Dkt. # 51-2), this Court found Defendants to be responsible for payment, and Defendants did not reimburse Plaintiff pursuant to this Court's Order or to § 2952(5). Defendants do not dispute this. (Defs' Resp., Dkt. # 71, at 7). Instead, they just take issue with Plaintiff's assertion that they have "made no effort to avail themselves of the 30-day grace period." (*Id.* at 3-5). In so doing, Defendants point to the parties' pre-judgment settlement discussions, placing the parties' failure to come to an amicable agreement on Plaintiff. Whatever the reason may be for the failure of the parties to settle this matter, Defendants have not complied with this Court's Order to reimburse Plaintiff. They simply cannot

rely upon pre-judgment settlement discussion conduct to show post-judgment compliance.

Accordingly, the Court will amend its judgment to add $1,146,508.82 (two times the amount of the dishonored checks) plus $250.00, for a total amended award of $1,720,013.23.

## B. Plaintiff is entitled to $91,104.00 in attorney fees

In order to determine a "reasonable fee" under Michigan law, this Court must first "begin its analysis by determining the fee customarily charged in the locality for similar legal services . . . us[ing] reliable surveys or other credible evidence of the legal market." *Smith v. Khouri,* 481 Mich. 519, 530-31 (2008). It must then multiply this rate by "the reasonable number of hours expended in the case." *Id.* at 531. The resulting number "serve[s] as the starting point for calculating a reasonable attorney fee," but is not presumed to be reasonable. *Id.* After reaching this "starting point," a court must then examine several non-exclusive factors drawn from *Wood v. Detroit Automobile Inter-Insurance Exchange*, 413 Mich. 573 (1982), and Michigan Rule of Professional Conduct 1.5(a) to either enhance or reduce the award. *Id.* at 533. The *Wood* factors are:

    (1)    The professional standing and experience of the attorney;
    (2)    The skill, time and labor involved;
    (3)    The amount in question and the results achieved;
    (4)    The difficulty of the case;
    (5)    The expenses incurred; and
    (6)    The nature and length of the professional relationship with the client.

*Id.* at 529. These factors overlap with Michigan Rule of Professional Conduct 1.5(a):

> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) The fee customarily charged in the locality for similar legal services;
> (4) The amount involved and the results obtained;
> (5) The time limitations imposed by the client or by the circumstances;
> (6) The nature and length of the professional relationship with the client;
> (7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) Whether the fee is fixed or contingent.

*Id.* at 530. "[T]he burden is on the fee applicant to produce satisfactory evidence -- in addition to the attorney's own affidavits -- that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 531. To do so, the fee application must include "detailed billing records" and evidentiary support. *Id.* at 532.

In support of its motion, Plaintiff attached both affidavits and a copy of the individualized billing statements for Clark Hill's work on this matter, reflecting as follows:

5

>   (1)   William G. Asimakis, Jr. expended 122.3 hours at $375.00 to $395.00 per hour for a total of $45,998.00;
>   (2)   Jennifer K. Green expended 86.5 hours at $305.00 to $315.00 per hour for a total of $26,608.50;
>   (3)   Bethany G. Stawasz expended 117.7 hours at $175.00 to $225.00 per hour for a total of $21,007.50;
>   (4)   Peter A Jackson expended 1.7 hours at $450.00 per hour for a total of $765.00;
>   (5)   Valentina Petrusha expended 6.5 hours at $180.00 per hour for a total of $1,170.00; and
>   (6)   Karen Scott Moore expended 3.7 hours at $150.00 per hour for a total of $555.00.

(Exs. B - E to Plf's Mtn, Dkt. ## 51-3 through 5, 7). They also attached a copy of the State Bar of Michigan's 2010 Economics of Law Practice Survey. (Ex. F to Plf's Mtn., Dkt. # 51-6). Upon review of these materials, Defendants' response thereto, and the record as a whole, the Court is persuaded that Plaintiff is entitled to $91,104.00 in fees.

Defendants do not dispute the hourly rates of Clark Hill, nor could they. These rates are commensurate with the billing rates of other large Detroit area firms. *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821-22 (6th Cir. 2013) ("A district court is permitted to 'rely on a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests.'") (citation omitted). As to the hours expended, Defendants take issue with the total number of hours billed on "a simple collection case with virtually no opposition or defense." (Defs' Resp., Dkt. # 71, at 9).

6

The Court absolutely disagrees that this is a "simple collection case." Defendants engaged in a sophisticated check-kiting scheme that involved three bank accounts and hundreds of check deposits and withdrawals resulting in a $573,254.11 loss for Plaintiff. As set forth in the Exhibits attached to Plaintiff's Motion for Summary Judgment, Defendants left a *significant* paper trail of bank statements, deposit slips, withdrawal slips, and checks that counsel had to comb through to unwind Defendants' web of transactions in order to properly depose Defendant Simon and his two bookkeepers, and then present these facts in a comprehensive manner to this Court in Plaintiff's Motion for Summary Judgment. Though not complex in the sense that it did not involve a multitude of depositions or a variety of disputed motions, the Court has no problem concluding that the facts presented by *Defendants*' fraudulent activity prevents this case from being classified as "simple."

Nor is it one where Defendants' actions obviated the need for Plaintiff to vigorously pursue its claims. Defendants denied all of the substantive allegations in Plaintiff's Complaint and pled a variety of affirmative defenses. (Defs' Ans., Dkt. # 9). They failed to timely produce documents and two of Defendants' bookkeepers for deposition. (Plf's Mtn., Dkt. # 19). And finally, Defendant Simon's invocation of his Fifth Amendment privilege against self-incrimination (as well as by Defendants' bookkeepers) did not absolve Plaintiff of establishing the

material facts of its case -- it still required the development of a detailed factual record of Defendants' scheme to which this Court would then apply an adverse inference to facts where Simon and the bookkeepers invoked this privilege. *RBS Citizens, NA*, 2013 WL 4496248, at *4-6.

That said and having reviewed all of Clark Hill's entries and considering the *Smith* factors, the Court can only quibble with those fees associated with Plaintiff's January 14, 2013 motion for a Temporary Restraining Order. *See RBS Citizens, N.A. v. M-59 Telegraph Petroleum LLC*, 2013 WL 508324 (E.D. Mich. Feb. 12, 2013) (Rosen, C.J.). Though not rising to the level of a violation of Rule 11 as suggested by Defendants,[1] Plaintiff's motion was unnecessary and did not contribute to the results obtained. The rest of Defendants' objections concerning time spent on deposition preparation, the November 8, 2012 Motion to Compel Discovery (Dkt. # 19), and settlement issues are meritless. Accordingly, the Court finds that Plaintiffs' requested fee award should be reduced by $5,000.00 to

---

[1] Defendants' response requests that this Court sanction Plaintiff pursuant to Rule 11 for filing this motion and for garnishing their counsel. (Defs' Resp., Dkt. # 71, 13, 15-16). Defendants did not file a separate motion for Rule 11 sanctions or provide any indication that they complied with its "safe harbor" provision. *Ridder v. City of Springfield*, 109 F.3d 288, 294 (6th Cir. 1997) ("[A] party seeking sanctions must follow a two-step process: first, serve the Rule 11 motion on the opposing party for a designated period (at least twenty-one days); and then file the motion with the court."). Defendants' request for Rule 11 sanctions is procedurally deficient, and is therefore denied.

$91,104.00. The Court finds that this amount is reasonable in relation to the original judgment, let alone the Court's amended judgment.[2]

### III. CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Plaintiff's Motion to Amend Judgment [Dkt. # 51] is GRANTED.

IT IS FURTHER ORDERED that the Court's August 21, 2013 Judgment is hereby amended to award Plaintiff $1,720,013.23 in damages.

IT IS FURTHER ORDERED that the Court's August 21, 2013 Judgment is hereby amended to award Plaintiff $91,104 in attorney fees.

A separate Amended Judgment will be entered.

**IT IS SO ORDERED.**

Dated: April 23, 2014     s/Gerald E. Rosen
                          Gerald E. Rosen
                          Chief Judge, United States District Cour

---

[2] The Court emphasizes that whether this matter should have settled and the reason for why settlement discussions -- in which this Court participated -- were ultimately not successful has no bearing as to this Court's present inquiry. There is no dispute that the parties did agree upon a number to settle this case ($675,000.00) and that settlement talks broke down in part due to non-monetary terms. What the Court finds compelling about this agreed upon number is that it essentially replicates the award Plaintiff would have received had Defendants taken advantage of this Court's 30-day grace period. The original judgment ($573,254.41) plus Plaintiff's request for fees ($96,104.00) equals $669,359.41, or $5,641.59 less than the parties' agreed settlement value. As Plaintiff notes, this demonstrates that Defendants -- at least at one point -- thought around $100,000 in fees was reasonable.

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 23, 2014, by electronic and/or ordinary mail.

                                                  s/Julie Owens
                                                  Case Manager, (313) 234-5135